UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANTHONY JEROME ALLEN, SR.,
      Plaintiff,

vs.                                                            Case No.: 3:23cv5670/MCR/ZCB

SANTA ROSA COUNTY SHERIFF'S OFFICE
and BOB JOHNSON,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a prisoner civil rights case that began in state court and was later removed to this Court. (Doc. 1). In his *pro se* complaint, Plaintiff has challenged the conditions of his pretrial confinement in the Santa Rosa County Jail. (Doc. 1-1). Defendants have moved to dismiss, arguing that Plaintiff failed to exhaust his administrative remedies and failed to state a claim upon which relief may be granted. (Doc. 3). Plaintiff has responded in opposition (Doc. 7), and the matter is ripe for resolution. For the reasons below, Plaintiff's claims against the Santa Rosa County Sheriff's Office should be dismissed for failure to state a claim. With respect to Sheriff Johnson, Plaintiff's federal claims should be dismissed for failure to exhaust administrative remedies, and the state law claim should be remanded to state court.

1

## I.    Background

Plaintiff's complaint names the Santa Rosa County Sheriff's Office (SRCSO) and Sheriff Bob Johnson as Defendants. (Doc. 1-1 at 1). Plaintiff alleges he is an inmate of the Santa Rosa County Jail, which is operated by the SRCSO. (*Id.*). He claims that the jail's rules have burdened the free exercise of his religion, in violation of the First and Fourteenth Amendments and Florida Statutes § 761.03. (*Id.* at 4-5). Plaintiff states he is a Hebrew Israelite, and one of the ways that he practices his religion is by wearing a turban. (*Id.* at 1). Plaintiff told this to the jail's chaplain, and Plaintiff requested that he be allowed to obtain the turban from his stored property. (*Id.*). As an alternative, Plaintiff proposed that his family purchase a new turban and bring it to the jail for him. (*Id.* at 1-3). The chaplain told Plaintiff that both of those options were against "jail rules." (*Id.*). Plaintiff seeks an order requiring the SRCSO to permit him to have a turban. (*Id.* at 6). He also seeks $200,000.00 in damages. (*Id.*).

## II.    Defendants' Motion to Dismiss and Plaintiff's Response

Defendants seek dismissal of Plaintiff's complaint on two grounds. (Doc. 3). First, Defendants argue that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation and Reform Act (PLRA) prior to filing this case. (*Id.* at 2-12). Second, Defendants argue that Plaintiff's allegations fail to state a plausible claim for relief. (*Id.* at 1 n.1, 13-14). Plaintiff has responded in opposition,

arguing that he completed the grievance process, albeit after he filed this lawsuit. (Doc. 7). He further claims that it would have been futile to pursue an administrative appeal and that the administrative appeal process was unavailable to him. And he argues that he has stated a plausible claim against Defendants.

### III.    Discussion

### A.    The Santa Rosa County Sheriff's Office cannot be sued under § 1983.

The capacity to be sued in federal court is governed by the law of the state in which the district court is located. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing Fed. R. Civ. P. 17(b)). Under Florida law, there are constitutionally created political subdivisions called counties and separately created constitutional officers. Fla. Const. Art. VIII, §§ 1(a) and (d). Florida does not recognize, either constitutionally or statutorily, a sheriff's office as a separate legal entity. The Santa Rosa County Sheriff's Office thus is not a legal entity subject to suit under § 1983. *See Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013) (affirming dismissal of § 1983 claims against the Monroe County Sheriff's Office, noting "Florida law has not established Sheriff's offices as separate legal entities with the capacity to be sued"); *see also Kinlaw v. Putnam Cnty. Sheriff's Office*, No. 3:19-cv-473, 2019 WL 1901327, at *1 (M.D. Fla. Apr. 29, 2019) ("In Florida, a sheriff's office is not a legal entity subject to suit in a civil rights action brought under § 1983."). Accordingly, Plaintiff's claims against the Santa Rosa

3

County Sheriff's Office should be dismissed for failure to state a claim upon which relief may be granted.

**B.    Plaintiff failed to exhaust his administrative remedies**

**1.    The PLRA's Exhaustion Requirement**

Under the PLRA, 42 U.S.C. § 1997e(a), a prisoner is required to exhaust all administrative remedies before bringing an action for relief under any federal law. *Porter v. Nussle*, 534 U.S. 516, 520 (2002).  The exhaustion requirement is intended to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 82, 93 (2006).  "The exhaustion requirement applies to all inmate suits about prison life." *Tilus v. Kelly*, 510 F. App'x 864, 866 (11th Cir. 2013).  A court cannot waive the PLRA's exhaustion requirement.  *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998).

To properly exhaust, a prisoner must complete the administrative process in accordance with the grievance procedures set by the institution. *Jones v. Bock*, 549 U.S. 199, 218 (2007).  Although an inmate must "exhaust available remedies," he "need not exhaust unavailable ones."  *Ross v. Blake*, 578 U.S. 632, 636 (2016). There are three circumstances when an inmate grievance procedure is unavailable: (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2)

where the administrative scheme is "so opaque that it becomes . . . incapable of use . . . [and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

The Eleventh Circuit has adopted a two-step framework for deciding whether to dismiss for lack of exhaustion. *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (2008). Under the first step, the Court must "look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). If the facts as stated by the prisoner show a failure to exhaust, then the case should be dismissed at step one. *Id.* Where dismissal is not warranted on the prisoner's view of the facts, it is necessary to proceed to step two. *Id.* There, "the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust." *Id.* "To make these specific findings, courts should . . . look outside [of] the pleadings[,]" ensuring the parties have had sufficient opportunity to develop the record. *Jenkins v. Sloan*, 826 F. App'x 833, 838 (11th Cir. 2020) (determining that step two requires the court to "identify conflicts in the two versions of events and make specific factual findings to resolve them").

Because the failure to exhaust is an affirmative defense, the defendant bears the burden to prove that the plaintiff failed to exhaust his administrative remedies. *Turner*, 541 F.3d at 1082. The defendant's burden at the second step is to prove that the plaintiff failed to exhaust available administrative remedies, which includes showing that a remedy is generally available. *See id.* If the defendant satisfies this burden, then the burden shifts to the plaintiff to prove that the generally available procedure was subjectively and objectively unavailable to him. *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020).

### 2.    Sheriff Johnson's Policy Regarding Exhaustion

Sheriff Johnson has promulgated a policy regarding inmate grievances at the jail. (Doc. 3 at 8-10). The inmate grievance policy, as well as information regarding inmate requests and other topics, is included in the Inmate Handbook. (*Id.* at 10-12). Defendants submitted copies of the Sheriff's policy and the Inmate Handbook as attachments to their motion to dismiss. (Docs. 3-1, 3-2).

The Handbook states that a "kiosk" or touchpad device is located in each housing unit for inmates to communicate requests to various divisions of the jail. (Doc. 3-2 at 21). An instruction sheet on how to access the kiosk is provided to inmates during the intake process. (*Id.*). If an inmate has problems using the kiosk, he may notify the deputy assigned to his housing unit. (*Id.*).

The Handbook also includes a section discussing inmate grievances. (Doc. 3-2 at 21). It informs inmates that if they have complaints about the conditions of their confinement or jail policies, then they may submit a grievance. (*Id.*). An inmate may submit a grievance either on a "hard copy" grievance form or by using the kiosk. (*Id.*). Inmates may request "hard copy" forms from the pod deputy. (*Id.*).

The Handbook informs inmates that there are "three stages" in the grievance process. (Doc. 3-2 at 21). At stage one, an inmate must submit an initial grievance within either seven days after the incident occurs or from the date that the inmate becomes aware of facts giving him the right to file a grievance.[1] (*Id.*). At stage two, an inmate may submit an appeal to the Operations Administrative Supervisor or Support Supervisor within five days from the date of the formal response. (*Id.*). At stage three, an inmate may appeal an administrative decision to the Jail Director or the Director's designee. (*Id.* at 21-22).

### 3.    The Exhaustion Defense and Plaintiff's Response

Defendants assert that Plaintiff did not properly exhaust his administrative remedies using the jail's procedures set forth above because he never appealed or sought administrative review of the response to his formal grievance. (Doc. 3 at 12).

---

[1] The official who receives the grievance may pass it to an appropriate staff member or department for response. (Doc. 3-1 at 2).

Plaintiff makes three arguments in response. (Doc. 7). First, he states that he completed the appeal stage in March of 2023 (after he filed this lawsuit), and he has attached copies of his kiosk requests as proof. (*Id.* at 6-7). Second, Plaintiff argues that pursuing an appeal beyond the formal stage would have been futile. (*Id.* at 4). Third, Plaintiff claims that the administrative appeal stage was unavailable because (1) he had no way of knowing about the appeal stage because he did not know how to correctly operate the kiosk to view all the text from page 21 to page 22 of the Inmate Handbook, and he was not provided a hard copy of the Handbook; and (2) the response that he received at the formal stage suggested that an appeal was "against the rules" of the SRCSO. (*Id.* at 3-4).

### a.    Post-suit Exhaustion

The plain language of § 1997e(a) provides that exhaustion is a precondition to filing an action in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought . . . *until* such administrative remedies as are available are exhausted." (emphasis added)). "The time the statute sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1324 (11th Cir. 2007). A legal action is "brought" when a complaint is filed, regardless of whether the complaint was initially filed in state court and then removed to federal court. *Sussman v. Metcalf*, No. 4:14cv619, 2016 WL 1211773,

at *3-4 (N.D. Fla. Feb. 2, 2016), *adopted*, 2016 WL 1226805 (N.D. Fla. Mar. 28, 2016).

The Court may dispose of Plaintiff's first argument at step one of the *Turner* analysis.  It is undisputed that on October 9, 2022, Plaintiff sent a request to the chaplain for a turban.  (Doc. 1-1 at 1; Doc. 3 at 12).  The chaplain responded, "Anthony, we can't get things out of property, and people can't bring things in for inmate. Jail Rules." (Doc. 1-1 at 1-2; Doc. 3 at 12).

It is also undisputed that on October 31, 2022, Plaintiff submitted a formal grievance requesting a turban, either from his stored property or his family.  (Doc. 1-1 at 2-3; Doc. 3 at 12; Doc. 7 at 6).  The Shift Supervisor assigned the grievance to the chaplain for response, and Chaplain J. Hill provided a response on November 7, 2022 as follows:

> Anthony, we cannot get things out of your property.  You need to send
> this to your shift supervisor.  Jail Rules is [sic] nothing can be sent or
> brought in from the outside.

(Doc. 7 at 6).

Plaintiff admits that he did not submit an appeal until March 16, 2023.  (Doc. 7 at 4, 6).  That was *after* he filed his civil rights complaint on November 21, 2022. (Doc. 1-1 at 6).  Grievances filed *after* Plaintiff filed his civil rights lawsuit are not relevant to the question of whether he properly exhausted his administrative

9

remedies under the PLRA. *Wright v. Ga. Dep't of Corrections*, 820 F. App'x 841, 844 (11th Cir. 2020) (affirming dismissal for failure to exhaust because prisoner "failed to complete the grievance process before he filed this action"); *Pavao v. Sims*, 679 F. App'x 819, 825 (11th Cir. 2017) (holding that when a court is determining whether the plaintiff satisfied the PLRA's exhaustion requirement, the court need not consider any actions that the plaintiff took after he filed the civil action).

Removing Plaintiff's post-suit appeal from consideration, it is undisputed that Plaintiff did not complete the administrative grievance procedure before he brought this legal action. Thus, Plaintiff failed to exhaust his administrative remedies as required by the PLRA.

### b.    Futility

In an attempt to avoid that conclusion, Plaintiff argues that his failure to exhaust should be excused because it would have been futile to complete the grievance process. (Doc. 7 at 4). More specifically, Plaintiff argues that pursuing an appeal beyond the formal stage would have been "useless." (Doc. 7 at 4). He states that the formal response to the grievance informed him that the jail's rules precluded the receipt of the turban from his property or a source outside the jail. (*Id.*). Based on that information, Plaintiff concluded that an appeal would have been "useless." (*Id.*).

The Supreme Court has considered and rejected a similar argument in the past. *See Booth v. Churner*, 532 U.S. 731 (2001). In *Booth*, a prisoner argued that exhaustion was unnecessary because he was seeking a type of relief that the administrative process did not provide. The Supreme Court rejected the argument because § 1997e(a) made no distinctions based on the particular "forms of relief sought and offered," and the Court refused to write "exceptions into statutory exhaustion requirements where Congress had provided otherwise." *Id.* at 741 n.6; *see also Higginbottom*, 223 F.3d at 1261 ("[T]he exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile."); *Pearson v. Taylor*, 665 F. App'x 858, 867 (11th Cir. 2016) (rejecting prisoner's argument that filing a grievance would have been ineffective, because prisoner failed to explain why the grievance system could not have provided some remedy for his problem).

Moreover, as will be discussed below, the grievance policy expressly told inmates that they were permitted to grieve jail policies. (Doc. 3-2 at 21). Thus, Plaintiff's personal belief that an appeal would have been "useless" did not excuse Plaintiff from completing the grievance process. There is no merit to Plaintiff's argument that his failure to exhaust should be excused because of futility.

11

### c.    Unavailability

Next, Plaintiff argues that his failure to exhaust should be excused because the administrative remedies were unavailable.  More specifically, he says that the appeal and administrative review stages were unavailable for two reasons:  (1) he had no way of knowing about the appeal or administrative review stage because he could not correctly operate the kiosk to view all the text from page 21 to page 22 of the Inmate Handbook, and he was not provided a hard copy of the Handbook; and (2) the response that he received at the formal stage suggested that an appeal was "against the rules." (Doc. 7 at 3-4).  In response, Defendants argue that the Sheriff's grievance policy submitted with the motion to dismiss was generally available to inmates at the jail.  (Doc. 3 at 12).

Plaintiff's unavailability arguments present factual disputes that require the Court to move to step two of the *Turner* analysis.  Based on the information submitted by Defendants, they have satisfied their initial burden of demonstrating that an appeal of the turban issue was generally available to Plaintiff.  So, the burden shifts to Plaintiff to prove that the appeal process was not available. *See Geter*, 974 F.3d at 1356.

Plaintiff's first "unavailability" argument is that he lacked knowledge of the appeal stage because he did not know how to correctly operate the kiosk to view all the text from page 21 to page 22 of the Inmate Handbook, and he was not provided

a "hard copy" of the Handbook. (Doc. 7 at 3). Plaintiff likens this situation to *Goebert v. Lee Cnty.*, 510 F.3d 1312 (11th Cir. 2007). In that case, the Eleventh Circuit held that the facility's administrative procedure for inmates to appeal adverse decisions on complaints was not "available" within the meaning of the PLRA, where the inmate had no way of knowing about it because the procedure was laid out in manual that inmates were never permitted to see, and it was not included in a handbook that was provided to inmates. *Id.* at 1322-23.

The Supreme Court cited *Goebert* with approval when it described the second kind of circumstance in which an administrative remedy, although officially on the books, is not "available" for purposes of § 1997e(a). *Ross*, 578 U.S. at 644. That circumstance is where the administrative scheme is so confusing that "no ordinary prisoner can make sense of what it demands . . . ." *Id.*

Three Eleventh Circuit cases illustrate this circumstance. In *Presley v. Scott*, 679 F. App'x 910 (11th Cir. 2017), the Eleventh Circuit concluded that the administrative procedures for filing and appealing grievances concerning the plaintiff's particular request/complaint were unavailable because the only access that inmates had to administrative regulations was through the law library computer, and the index from that computer omitted the particular regulation relevant to the plaintiff's request/complaint. *Id.* at 911-12.

In *Brown v. Drew*, 452 F. App'x 906 (11th Cir. 2012), the Eleventh Circuit concluded that the administrative process was unavailable because a delay in delivering a response from the Regional Office prevented the plaintiff from being able to timely resubmit his appeal to that office, as required, and nothing in the record established that the plaintiff was aware, or could readily become aware, of his right to request an extension of time to file an appeal. *Id.* at 908.

In *Williams v. Marshall*, 319 F. App'x 764 (11th Cir. 2008), the Eleventh Circuit found that the record was unclear as to whether the administrative grievance procedure was available to the plaintiff where the inmate handbook stated that inmates were allowed to file grievances and that those grievances must be in writing and signed by the accepting officer, but in order to understand the grievance procedure, an inmate was required to reference a policy directive that was not included or referenced in the handbook. *Id.* at 768.

Here, Plaintiff does not dispute that the entire Inmate Handbook, including the information regarding appeals and administrative review, was generally available to inmates on the kiosk. Instead, he states that he initially did not see that text because he did not know to "hold" the kiosk screen and scroll from page 21 to page 22. (Doc. 7 at 3). Appeals are first discussed in the last full paragraph of page 21 in the Handbook. (Doc. 302 at 21). The discussion continues into the next paragraph, titled **Administrative Review**, and that paragraph continues onto page

22. (*Id.*). *Preceding* the first mention of appeals is text that notifies inmates that there are "three stages" of a grievance. (*Id.*). Thus, an ordinary prisoner would have been on notice that more information was provided later in the Handbook. And an ordinary prisoner would have known that if he was unable to operate the kiosk sufficiently to find information about additional grievance stages, then he should ask the housing unit deputy for assistance. That is so because further up on page 21 (in the **Inmate Request Forms** section), the Handbook instructs inmates to notify the housing unit deputy if they have problems using the kiosk. (*Id.*).[2] Plaintiff has not alleged that he tried without success to obtain assistance with the kiosk from the housing unit deputy. Accordingly, Plaintiff has not satisfied his burden of proving that the appeal and administrative review provisions were "unavailable" because of his alleged inability to use the kiosk's scrolling function.

Plaintiff's second "unavailability" argument is that he inferred, from the chaplain's response, that proceeding further was "against the rules." (Doc. 7 at 4). This is what the chaplain told Plaintiff:

---

[2] There is no dispute that Plaintiff was able to view information about inmate requests and initial grievances, because he states he submitted an inmate request to the chaplain and then submitted a grievance to Lieutenant Olson. (Doc. 1-1 at 1-3; Doc. 7 at 2, 6).

Anthony, we cannot get things out of your property.  You need to send

this to your shift supervisor.  Jail Rules is [sic] nothing can be sent or

brought in from the outside.

(Doc. 7 at 6).

Plaintiff's argument appears to implicate the two other circumstances that the

Supreme Court recognized in *Ross* as rendering a grievance process unavailable.

One of those circumstances is when, despite what the grievance policy promised, it

operated as "a simple dead end," with no possibility for aggrieved inmates to obtain

some relief.  *Ross*, 578 U.S. at 643.  The other circumstance is when "prison

administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation."  *Id.* at 644.

Plaintiff argues that the chaplain's formal response is identical to language

that the Eleventh Circuit held was sufficiently deterrent in nature to render further

review of a grievance unavailable.  In *Miller v. Tanner*, 196 F.3d 1190 (11th Cir.

1999), the inmate received the following response to his mid-level grievance:

"[w]hen any grievance is terminated at the institutional level you do not have the

right to appeal.  The above listed grievance(s) is closed."  *Id.* at 1194.  The Eleventh

Circuit said that this response "unambiguously told Miller that an appeal was futile,

even prohibited.  In other words, appealing might be treated as insubordination and

that there might be harmful consequences for disobeying the rules."  *Id.*

The chaplain's response to Plaintiff's grievance here is easily distinguished from the response in *Miller*. The chaplain in this case did not unambiguously tell Plaintiff that appeal was prohibited or futile. To the contrary, the chaplain told Plaintiff to pursue the issue with his shift supervisor.

Additionally, the chaplain's reference to the jail's rules did not suggest that further review of the turban issue was unavailable. The Inmate Handbook plainly tells inmates that they are permitted to file grievances about "facility policies." (Doc. 3-2 at 21). The topics which may *not* be grieved are listed on the next page (page 22) and include: (1) Federal, state, and local laws and regulations, (2) court decisions, (3) probation and parole actions, and (4) "other matters beyond the control of the Santa Rosa County Sheriff's Office." (Doc. 3-2 at 22). The jail's rules/policies do not fall within any of those prohibited topics.

Plaintiff has not shown that the chaplain's response to his grievance rendered further review unavailable. He, therefore, was required to file an appeal in order to properly exhaust his administrative remedies.

To summarize, Plaintiff's arguments regarding post-suit exhaustion and futility are rejected at the first step of the *Turner* analysis. Plaintiff's unavailability arguments are rejected at the second step of *Turner*. Because Plaintiff failed to administratively exhaust before filing this lawsuit as required by the PLRA, his federal claims should be dismissed as required by 42 U.S.C. § 1997e(a).

17

## IV.    Remand of Plaintiff's state law claim

Plaintiff originally filed this case in the First Judicial Circuit in and for Santa Rosa County, Florida. (Docs. 1, 1-1).  The complaint asserts federal claims under the First and Fourteenth Amendments and 42 U.S.C. § 1983, as well as a state law claim under Florida Statutes § 761.03.  (Doc. 1-1).  Defendants removed it to this Court based on federal question jurisdiction.  (Doc. 1 at 2).

As discussed above, the undersigned recommends dismissal of Plaintiff's federal claims.   If this recommendation is adopted, then only the Court's supplemental jurisdiction over Plaintiff's state law claim would remain.

A district court may decline to exercise supplemental jurisdiction over state law claims when, among other things, it has "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The decision of whether to exercise supplemental jurisdiction over remaining state law claims is discretionary.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999).  When determining whether to exercise or decline supplemental jurisdiction, courts consider the following:

(1) whether the state law claims predominate in terms of proof, the scope of the issues raised, or the comprehensiveness of the remedy sought; (2) whether comity considerations warrant determination by a state court (i.e., is the state claim novel or particularly complex such

> that an accurate definitive interpretation of state law is necessary); (3) whether judicial economy, convenience, and fairness to the litigants would best be served by trying the federal and state claims together; and (4) whether "the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong."

*L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) (citing *Gibbs*, 383 U.S. at 726-27).[3]

The stage of the federal court proceedings weighs heavily in the Court's consideration of these factors. Notably, "if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper & Son*, 735 F.2d at 428. Elimination of federal law claims "at an early stage of the litigation" is "a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988).

Considering the early stage of the proceedings in this Court, the undersigned recommends declining supplemental jurisdiction over Plaintiff's state law claim and remanding that claim to state court. *See Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1226–27 (11th Cir. 2010).

---

[3] Although these factors were articulated by the Supreme Court prior to the codification of § 1367, the considerations have survived codification. *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994).

## V. Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1.      Defendants' motion to dismiss (Doc. 3) be **GRANTED in part regarding Plaintiff's federal law claims and DENIED in part regarding Plaintiff's state law claim.**

2.      Plaintiff's claims against Defendant Santa Rosa County Sheriff's Office be **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

3.      Plaintiff's federal law claims against Defendant Sheriff Johnson be **DISMISSED** without prejudice for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

4.      That supplemental jurisdiction over Plaintiff's state law claim against Defendant Sheriff Johnson be **DECLINED** and such state law claim be **REMANDED** to the Circuit Court for the First Judicial Circuit in and for Santa Rosa County, Florida.

5.      The Clerk of Court be directed to close this case.

At Pensacola, Florida, this 22nd day of September 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

20

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.